1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MICHAEL JOHN WOODWORTH,

              Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

              Defendant.

_____/

Case No. 1:21-cv-00159-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.     INTRODUCTION

    Plaintiff Michael John Woodworth ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K.

_____

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

Oberto, United States Magistrate Judge.[2]

## II.    BACKGROUND

Plaintiff was born on July 6, 1975, has a high school education, and can communicate in English.  (Administrative Record ("AR") 38, 52, 72, 86, 243, 248, 264, 275.)  On August 16, 2016, Plaintiff protectively filed a claim for DIB payments, alleging disability beginning on September 28, 2015, due to left ankle problems and depression.  (AR 27, 33, 71–72, 85, 97, 104, 201–205, 247.)  On September 29, 2017, after filing a request for a hearing following the denial of DIB, Plaintiff protectively filed a claim for SSI payments, also alleging disability beginning on September 28, 2015.  (AR 206–218.)  Such claim was escalated to the hearing level at that time. (AR 27.)

### A.    Relevant Evidence of Record[3]

#### 1.    Medical Evidence

In July 2015, Plaintiff reported experiencing bilateral foot and ankle pain.  (AR 302.) Radiologic studies showed sclerosis of the left navicular with arthritic changes of the talonavicular and naviculocuneiform joints, as well as the presence of right sinus tarsi syndrome.  (AR 303.)  An MRI performed in August 2015 of Plaintiff's left foot similarly showed osteonecrosis of the navicular with arthritis of the talonavicular joint.  (AR 306.)  In October 2015, Plaintiff underwent surgery in his left foot performed by Heather A. Hento, D.P.M., and was thereafter advised by Dr. Hento to "remain strictly nonweightbearing of the left lower extremity with crutch assist."  (AR 308–09, 311, 313, 317.)  At a follow up appointment later that month, Dr. Hento instructed him on how to use a bone stimulator daily to the left lower extremity.  (AR 315.)  Dorsal displacement of the bone graft was noted.  (AR 314.)

In November 2015, Plaintiff presented for a follow up appointment and told Dr. Hento that "he has not been applying his bone stimulator daily to the left foot."  (AR 316.)  He also indicated he has "been applying small amounts of weight to the left foot with ambulating."  (AR 318.) Plaintiff was instructed by Dr. Hento to "remain nonweightbearing" with the use of a walker, to ice

---

[2]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10.)

[3]  Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

and elevate the left lower extremity, and to apply his bone stimulator to that area daily.  (AR 319.)

Plaintiff reported using the bone stimulator, albeit not daily, at a follow up appointment with Dr. Hento in December 2015.  (AR 320.)  He also reported that he "continues to apply small amounts of weight to the left foot while ambulating."  (AR 320.)  He was permitted to begin ambulating with the use of a walker and instructed to apply the bone stimulator daily.  (AR 321.)  Later that month, Dr. Hento noted that Plaintiff "has been applying the bone stimulator to the left foot but admits he does not do so daily, once again."  (AR 322.)  At that appointment, Dr. Hento "discussed the need to apply [the stimulator] daily" with Plaintiff.  (AR 323.)  In February 2016, Plaintiff reported to Dr. Hento that he had missed using the stimulator three days in the past month. (AR 326.)

In March 2016, Plaintiff reported at a follow up appointment with Dr. Hento that he "has not been standing or walking much during the day [and] sits most of the day." (AR 328.)  He stated that he can stand/walk for one hour before having to rest due to onset of pain.  (AR 328.)  Plaintiff and Dr. Hento "discussed the need for him to stand conditioning himself to return to work, i.e., begin standing/walking more throughout the day vs. sitting." (AR 329.)  Plaintiff reported the ability to stand/walk for 4-5 hours before resting in April 2016, but in May 2016 he was back to only one hour.  (AR 332.)

At follow-up appointments with Dr. Hento in June and September 2016, Plaintiff and his provider "discussed the presence of the retracted screw-type fixative and the need to remove it." (AR 335, 337.)  In January 2017, Plaintiff had the screw-type fixture surgically removed.  (AR 341–44.)  Following the surgery in February 2017, Plaintiff described his pain to Dr. Hento as "0/10."  (AR 352.)

In January 2018, Plaintiff was referred for a consultation with Inyong Hwang, M.D., a vascular health specialist.  (AR 439.)  Dr. Hwang observed that Plaintiff was "likely to have Coronary Artery Disease, Chronic Venous Insufficiency and Peripheral Artery Disease."  (AR 439.)  Plaintiff presented for follow up appointments with Dr. Hwang in March 2019, complaining of bilateral leg pain and swelling.  (AR 422, 426.)  He reported using leg elevation, exercise, weight management measures, and compression stockings to address his chronic venous insufficiency, but

1  that leg elevation and compression stockings gave him no relief.  (AR 422, 426.)  Dr. Hwang noted

2  that "[t]here is a possible worsening" of chronic venous insufficiency, and recommended that he

3  continue to employ weight management measures, exercise, leg elevation, and compression

4  stockings.  (AR 424, 428–29.)

5      In April 2019, Plaintiff reported to his primary care physician that he had "no acute

6  concerns," he was "working on diet and weight loss since last encounter," and "improved in quality

7  of food and portion control."  (AR 397.)

8      **2.      Opinion Evidence**

9      In October 2016, G. Bugg, M.D., a state agency physician, reviewed the record and assessed

10  Plaintiff's residual functional capacity (RFC).[4]  (AR 78–80.)  Dr. Bugg found that Plaintiff could

11  occasionally lift and/or carry 20 pounds and frequently 10 pounds; stand and/or walk for about

12  three hours in an eight-hour workday; sit for about six hours in an eight-hour workday; perform

13  unlimited pushing and pulling, subject to the lift-and-carry restrictions; occasionally climb; and

14  frequently balance, stoop, kneel, crouch, and crawl.  (AR 79–80.)  Upon reconsideration in May

15  2017, another state agency physician, H.M. Estrin, M.D., reviewed the record and found that

16  Plaintiff could occasionally lift and/or carry 20 pounds and frequently 10 pounds; stand and/or walk

17  for about two hours in an eight-hour workday; sit for about six hours in an eight-hour workday;

18  occasionally perform bilateral extremity pushing and pulling; occasionally climb ramps and stairs,

19  balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; and avoid

20  concentrated exposure to hazards.   (AR 90–92.)

21  **B.      Administrative Proceedings**

22      The Commissioner denied Plaintiff's application for DIB initially on January 4, 2017, and

23  again on reconsideration on April 3, 2017.  (AR 97–100, 104–110.)  Consequently, Plaintiff

24  _____

25  [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Titles

26  II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an

27  individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and

28  'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

requested a hearing before an Administrative Law Judge ("ALJ").  (AR 111–112.)  The ALJ conducted a hearing on May 10, 2019.  (AR 46–70.)  Plaintiff appeared at the hearing with his non-attorney representative and testified as to his alleged disabling conditions.  (AR 51–63.)

### 1.    Plaintiff's Testimony

Plaintiff testified that he was terminated from his job as a forklift operator because he did not supply certain information his employer requested from his medical service providers.  (AR 53.)  He received unemployment benefits for nine months following his termination.  (AR 54–55.)

Plaintiff testified that he lives in a house with his girlfriend and shares custody of his 10-year-old son.  (AR 52, 55.)  He sees his son every weekend and can drive to pick him up from school and to take him home after visits, which totals about "four or five miles."  (AR 52, 62.)  According to Plaintiff, he and his son watch television and play video and board games.  (AR 57–58.)  He also will occasionally throw a ball with his son or play a round of "HORSE" basketball.  (AR 62.)

Plaintiff testified he can perform his personal hygiene such as brush his teeth and take a shower.  (AR 55.)  He can occasionally shop for groceries and wash dishes.  (AR 56–57, 63.)  Plaintiff stated he can only walk for five minutes and stand for seven minutes without experiencing pain in his legs.  (AR 58.)  He can only sit for ten minutes until experiencing cramps and numbness.  (AR 58–59.)  According to Plaintiff, he can lift and carry between 10 and 15 pounds.  (AR 59.)  He testified it is difficult for him to stand or sit in one spot, and that he must elevate his legs due to pain.  (AR 61.)

### 2.    The VE's Testimony

A VE also testified at the hearing  (AR 63–70.)  He testified that Plaintiff had past relevant work as an inventory control clerk, Dictionary of Operational Titles ("DOT") code 219.387-030, with a light exertional level as generally performed and a specific vocational preparation (SVP)[5]

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

of 5.  (AR 64.)  Plaintiff also had past relevant work as a warehouse worker, DOT code 922.687 058, SVP of 2; a forklift driver, DOT code 921.683-050, medium exertion and SVP of 3; a housecleaner, DOT code 301.474-010, medium exertion and SVP of 3; and a stocking clerk, DOT code 299.367-014, heavy exertion and SVP of 4.  (AR 64–65.)

The ALJ asked the VE a hypothetical question in which the VE was to consider a person of Plaintiff's age, education, and work experience, who is limited to the sedentary exertional level and with the following additional limitations: a maximum of two hours of standing and walking in an eight-hour workday; a maximum of six hours of sitting in an eight-hour workday; occasional climbing of stairs and ramps, but never climbing ladders or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; occasional use of foot pedals with the bilateral lower extremities; avoidance of all exposure from dangerous moving mechanical parts and unprotected heights; and would need to use a cane to ambulate.  (AR 65.)  The VE testified that such a person could not perform Plaintiff's past relevant work.  (AR 65.)  The VE further testified that such a person could perform other, sedentary positions under the DOT in the national economy, such as a call-out operator, DOT code 237.367-014 and SVP 2, with "roughly 20,700 plus jobs" in the national economy; addresser, DOT code 209.587-010 and SVP 2, with "roughly 20,300 plus jobs" in the national economy; and document assembler, DOT code 249.587-018 and SVP 2, with "35,030 plus employers" in the national economy.  (AR 65–66.)

In a second hypothetical, the VE was asked by the ALJ to consider the same person as in the first, but with the additional limitations that the individual (1) would be likely to be off task 15 percent of the workday in order to rest and (2) would be likely to miss more than two days of work per month.  (AR 66.)  The VE testified that no work would be available .  (AR 66–67.)

In a third hypothetical, Plaintiff's representative asked the VE to consider the person presented in the first hypothetical, but who would need to elevate his right leg "almost at a heart level, at least one-to-two hours" out of the workday.  (AR 68.)  The VE responded there would be no work such a person could perform.  (AR 68.)

**C.      The ALJ's Decision**

In a decision dated June 6, 2019, the ALJ found that Plaintiff was not disabled, as defined

1   by the Act.  (AR 27–40.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R.

2   §§ 404.1520, 416.920.   (AR 26–38.)   The ALJ decided that Plaintiff met the insured status

3   requirements of the Act through December 31, 2020, and he had not engaged in substantial gainful

4   activity since September 28, 2015, the alleged onset date (step one).  (AR 30.)  At step two, the

5   ALJ found Plaintiff had the following severe impairments: osteoarthrosis, dysfunction major

6   joints—bilateral feet, chronic venous insufficiency, and obesity.  (AR 30–32.)  Plaintiff did not

7   have an impairment or combination of impairments that met or medically equaled one of the listed

8   impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 32–

9   33.)

10          The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five.

11  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual

12  functional capacity . . . . We use this residual functional capacity assessment at both step four and

13  step five when we evaluate your claim at these steps."); *see also* 20 C.F.R.§ 416.920(a)(4).  The

14  ALJ determined Plaintiff had the RFC:

15              to perform sedentary work as defined in 20 C.F.R [§§] 404.1567(a) and 416.967(a)
16              except: [Plaintiff] can stand and walk for two hours of an eight-hour workday, and
                sit for six hours of an eight-hour workday.  He can never climb ladders or scaffolds,
17              occasionally climb stairs or ramps, and frequently perform all other postural
                activities.  [Plaintiff] can occasionally operate foot pedals with his bilateral lower
18              extremities.  He must avoid all exposure to dangerous moving mechanical parts and
                unprotected heights.  [Plaintiff] requires a cane for ambulation.
19

20  (AR 33–37.)   Although the ALJ recognized that Plaintiff's impairments "could reasonably be

21  expected to cause some of the alleged symptoms[,]" they rejected Plaintiff's subjective testimony

22  as "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR

23  34.)  The ALJ determined that Plaintiff was unable to perform his past relevant work (step 4), but

24  was not disabled because, given his RFC, he could perform a significant number of other jobs in

25  the national economy, specifically call out operator, addresser, and document preparer (step 5).

26  (AR 37–39.) The ALJ concluded Plaintiff was not disabled at any time from September 28, 2015,

27  through the date of their decision.  (AR 39.)

28          Plaintiff sought review of this decision before the Appeals Council, which denied review

7

on February 28, 2020.  (AR 13–18.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

1    "The claimant carries the initial burden of proving a disability in steps one through four of
2    the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).
3    "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to
4    the Commissioner in step five to show that the claimant can perform other substantial gainful work."
5    *Id.* (citing *Swenson*, 876 F.2d at 687).

6    **B.     Scope of Review**

7    "This court may set aside the Commissioner's denial of [social security] benefits [only]
8    when the ALJ's findings are based on legal error or are not supported by substantial evidence in
9    the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is
10   'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might
11   accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)
12   (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d
13   1141, 1154 (9th Cir. 2020).

14   "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*
15   *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by
16   inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th
17   Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when
18   the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v.*
19   *Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one
20   rational interpretation, the court may not substitute its judgment for that of the Commissioner."
21   (citations omitted)).

22   Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a
23   specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*,
24   143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole,
25   weighing both evidence that supports and evidence that detracts from the [Commissioner's]
26   conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

27   Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."
28   *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*,

454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.      DISCUSSION

Plaintiff contends that the ALJ erred by (1) improperly relying on the VE's testimony at step five of the sequential evaluation; (2) failing to weigh functional limitations by treating physician Dr. Hwang; (3) failing to consider limitations caused by Plaintiff's chronic venous insufficiency; and (4) improperly rejecting Plaintiff's testimony.

### A.      The ALJ Did Not Err At Step Five

Plaintiff asserts that the jobs of addresser and document preparer identified by the VE are "obsolete" and do not exist in significant numbers in the national economy.  (*See* Doc. 17 at 9–11; Doc. 25 at 1–2.)  As an initial matter, Plaintiff did not question the job numbers at the hearing or otherwise object to the VE's testimony.  *Bayliss*, 427 F.3d at 1218 (finding that an ALJ "may take administrative notice of any reliable job information, including information provided by a VE" and noting that a VE's "recognized expertise provides the necessary foundation for his or her testimony . . . no additional foundation is required"); *see Shaibi v. Berryhill*, 883 F.3d 1102, 1108–09 (9th Cir. 2018) (holding that a claimant who does not raise challenges to the "evidentiary basis" of vocational expert testimony about job numbers at the hearing forfeits the right to do so in court).  The ALJ was therefore entitled to rely on the job numbers identified by the VE.  *See Rivota v. Saul*, No. 1:18-CV-01342-BAM, 2020 WL 1306985, at *8 (E.D. Cal. Mar. 19, 2020).

Even if the ALJ's reliance was erroneous, it was not harmful.  Plaintiff is correct that some courts in the Ninth Circuit have found that the occupations of "addresser" and "document preparer" do not exist in significant numbers in the national economy.  *See, e.g., Sandra M. H. v. Saul*, No. SA CV 18-1933-PLA, 2019 WL 5209245, at *3 (C.D. Cal. Oct. 16, 2019) ("noting that certain courts had found occupations of 'addressing clerk' and 'document preparer' to be obsolete.");

1   *Bazan v. Berryhill*, No. 18-cv-01224-KAW, 2019 WL 4751874, at *8 (N.D. Cal. Sept. 30, 2019)

2   (finding that per the Social Security Administration's own findings, the addresser job is obsolete.);

3   *Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL 1631275, at *8 (C.D. Cal. Apr. 2, 2018) ("As

4   other courts have found, common sense (bolstered here by the information presented in the Study

5   and on the SSA website itself), casts doubt on the reliability and credibility of the VE's testimony

6   and on the ALJ's reliance on that testimony to conclude that the occupation of 'addresser' currently

7   exists in significant numbers."); *Wood v. Berryhill*, No. 3:17-CV-5430-RJB-BAT, 2017 WL

8   6419313, at *2 (W.D. Wash. Nov. 17, 2017), *report and recommendation adopted*, No. 3:17-CV-

9   5430-RJB-BAT, 2017 WL 6372590 (W.D. Wash. Dec. 13, 2017) ("[T]he positions of document

10  preparer and nut sorter do not exist in significant numbers in the national economy.").  This Court

11  need not determine whether these jobs are obsolete, however, because the remaining job that ALJ

12  found Plaintiff could perform, call out operator with 20,700 jobs in the national economy, exists in

13  sufficient number to render Plaintiff not disabled.

14       Importantly, there is no "bright-line rule for what constitutes a 'significant number' of

15  jobs." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012); *accord Young v. Astrue*, 591 F. App'x

16  769, 772 (3rd Cir. 2013) (noting "there is no precise estimate for what constitutes 'significant

17  numbers' of jobs under the Social Security Act").  Nationwide figures necessarily require a greater

18  total to constitute a "significant" number, as the jobs exist across "several regions" of the country.

19  *See Beltran,* 700 F.3d at 389-90.  The Ninth Circuit has determined 25,000 jobs in the national

20  economy was sufficient to meet this standard, see *Gutierrez v. Comm'r*, 740 F.3d 519, 523 (9th

21  Cir. 2014), but that number is not a "baseline."  *Acuna v. Colvin*, No. EDCV 14-2404 AGR, 2015

22  WL 7566624 at *3 (C.D. Cal. Nov. 24, 2015) (rejecting the argument that *Gutierrez* established a

23  "baseline" number and finding 24,000 jobs in the national economy was a significant number).

24  This Court and others in this Circuit have also determined that 14,000 or more jobs are a

25  "significant number" in the national economy.  *See, e.g., Kimberly T. v. Kijakazi,* No. 3:20-CV-

26  1543-SI, 2022 WL 910083, at *8 (D. Or. Mar. 29, 2022) (concluding that 15,000 national jobs

27  "constitutes a significant number of jobs."); *Mark M. v. Comm'r*, No. 3:19-CV-00495-MC, 2020

28  WL 7695848, at *4 (D. Or. Dec. 28, 2020) ("[T]he 855 counter-clerk jobs in addition to the 13,500

call-out operator jobs are a significant number."); *Davis v. Comm'r*, No. 1:17–cv–00621–SAB, 2018 WL 1779341, at *6 (E.D. Cal. Apr. 12, 2018) (finding 15,000 national jobs to be significant number), *overruled on other grounds*, 846 F. App'x 549 (9th Cir. 2021); *Jeter v. Berryhill*, No. EDCV 17–1930 AGR, 2018 WL 2121831, at *3 (C.D. Cal. May 8, 2018) ("Although at the low end, the ALJ's finding as to [20,000] national jobs meets the legal standard"); *Montalbo v. Colvin*, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (finding 12,300 jobs are a significant number); *Peck v. Colvin*, No. CV 12–577 AGR, 2013 WL 3121280, at *5 (C.D. Cal. June 19, 2013) (concluding that 14,000 is a significant number of jobs).

Thus, the Court finds that the 20,700 call out operator positions establishes a significant number of jobs in the national economy. *See Mark M.,* 2020 WL 7695848, at *4; *Torres v. Astrue*, No. EDCV 11-315 AGR, 2012 WL 1032897, at *3 n.3 (C.D. Cal. Mar. 27, 2012) (rejecting argument that call our operator position, with 18,201 jobs nationally, did not constitute a significant number of positions to support the ALJ's finding).  And, because the record establishes that Plaintiff can perform work existing in significant numbers in the national economy, any error concerning the address or document preparer positions was necessary harmless. *See, e.g., Buck v. Berryhill*, 869 F.3d 1040, 1051 & n.2 (9th Cir. 2017) (finding that error in concluding that plaintiff could work in three particular jobs would be harmless as long as three other jobs VE identified existed in sufficient numbers); *Berry v. Colvin*, 657 F. App'x 650, 652 (9th Cir. 2016) (finding that error in concluding that plaintiff could perform past work as courier driver was harmless because ALJ correctly found that plaintiff could perform other jobs).

**B.     The ALJ Did Not Err in Formulating Plaintiff's RFC**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular physician's assessment. *See, e.g., Turner v. Comm'r Soc. Sec. Admin*., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination

while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints.  *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## 1.   Leg Elevation

Plaintiff contends that the ALJ's RFC determination is unsupported by substantial evidence first because the ALJ failed to "address the functional restriction that Plaintiff must elevate his legs as part of his treatment for this condition," which Plaintiff attributes to Dr. Hwang.  (Doc. 17 at 11–12.  *See also* Doc. 25 at 3–4.)  Plaintiff mischaracterizes the record.  The only statement that could arguably be construed as a medical opinion given by Dr. Hwang was that Plaintiff "is likely to have Coronary Artery Disease, Chronic Venous Insufficiency, and Peripheral Artery Disease," to which the ALJ gave "partial weight" (and with which Plaintiff takes no issue).[6]  (AR 27.  *See also* AR 439.)  Leg elevation, however, was not a ***limitation*** that was ***opined*** by Dr. Hwang, but instead a ***treatment*** that was ***recommended*** during his visits with Plaintiff.[7]  (*See* AR 424, 428–29.)

"Where a treating physician's opinion does not contain any functional limitations, the ALJ is not required to provide reasons for rejecting that opinion."  *Benear v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04160-PHX-JAT, 2019 WL 258345, at *15 (D. Ariz. Jan. 18, 2019); *see also Smith v. Berryhill*, 708 F. App'x 402, 403 (9th Cir. 2017) ("The ALJ did not err by not providing reasons to reject Dr. Ashcraft's letter because the letter contained no opinions as to [the claimant's] functional limitations."); *Turner*, 613 F.3d at 1223 ("[T]he ALJ did not need to provide 'clear and convincing reasons' for rejecting [the physician's] report because the ALJ did not reject any of [the

---

[6] Plaintiff filed his DIB claim before March 27, 2017, so Section 404.1527, not Section 404.1520c, governs the ALJ's evaluation of medical opinions.  *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).
[7] A treatment that, incidentally, Plaintiff reported afforded him no relief.  (*See* AR 422, 426.)

physician's] conclusions.").  Because Dr. Hwang's treatment records contained no "opinion" that Plaintiff was required to elevate his legs, the Court finds the ALJ did not err in failing to consider such limitation in their RFC assessment.

### 2.  Chronic Venous Insufficiency

Plaintiff next asserts that the ALJ's RFC assessment is erroneous because it lacks functional restrictions resulting from his severe impairment of chronic venous insufficiency.  (*See* Doc. 17 at 12–13.)  Not so.

The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Such a responsibility does not result in the ALJ committing legal error when they assess an RFC that is consistent with the record.  *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

According to the record, the only expert medical opinions regarding Plaintiff's impairments are those of State agency physicians Drs. Bugg (AR 79–80) and Estrin (AR 90–92).  The ALJ considered the weight of these opinions, as the ALJ is charged to do, and rejected a limitation to "sedentary" exertional activity, finding instead that the opinions—as well as the "evidence of record" that post-dated the opinions that showed Plaintiff's "severe left lower extremity impairment worsened before it improved"—demonstrated that Plaintiff is "capable of ***less than*** the full range of work at the sedentary level."  (AR 36 (emphasis added).)  The ALJ then formulated Plaintiff's RFC, which included additional physical limitations beyond those found by the opining physicians.  (*Compare* AR 79–80 and 90–92 *with* AR 33.)[8]  *See Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ erred in formulating an RFC lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC.").  *See also* 20 C.F.R. § 404.1527(d)(2) ("the final responsibility for deciding [RFC] is

---

[8] The ALJ's RFC assessment is also based on consideration of the subjective complaint testimony, which, as set forth more fully below, the ALJ properly discredited.

1  reserved to the Commissioner), § 404.1545(a)(1) ("We will assess your residual functional capacity

2  based on all the relevant evidence in your case record."). *See also id*. §§ 416.927(d)(2);

3  416.945(a)(1).

4         In contrast to the lone case cited by Plaintiff, *Bazzle v. Saul*, No. 1:19-CV-01565-EPG,

5  2021 WL 53183 (E.D. Cal. Jan. 6, 2021), this is not a situation where the ALJ failed to consider,

6  and include, limitations resulting from a diagnosis made after a medical opinion was given.  Here,

7  the ALJ expressly considered the medical record subsequent to the State agency physician's

8  opinions that supported Plaintiff's chronic venous insufficiency (*see* AR 35, 37), and found that it

9  supported a more restrictive RFC than a sedentary exertional activity level, including, for example,

10 the use of a cane to ambulate.  (AR 33.)  Plaintiff does not specify what additional functional

11 limitations resulting from his chronic venous insufficiency that were not accounted for in the ALJ's

12 RFC assessment (other than the above-discussed "leg elevation" limitation).  Nor does he otherwise

13 show any inconsistency between the medical record and his RFC.  Plaintiff may disagree with the

14 RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational

15 interpretation of the evidence.  *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding

16 for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

17        **3.      Subjective Complaints**

18        Finally, Plaintiff criticizes the ALJ's RFC assessment on grounds that it "failed to include

19 work-related limitations in the RFC that correspond to Plaintiff's symptoms."  (Doc. 17 at 14–17.)

20 The Court finds that ALJ properly discredited Plaintiff's subjective symptom testimony.

21              a.      Legal Standard

22        In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

23 must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First,

24 the ALJ must determine whether the claimant has presented objective medical evidence of an

25 underlying impairment that could reasonably be expected to produce the pain or other symptoms

26 alleged.  *Id*.  The claimant is not required to show his impairment "could reasonably be expected

27 to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably

28 have caused some degree of the symptom."  *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028,

1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.[9]  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

      b.    <u>Analysis</u>

As set forth above, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  (AR 34.)  The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 34.)  Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See*

---

[9] The Court rejects the Commissioner's contention that a lesser standard of review applies.  (*See* Doc. 24 at 8 n.1.)

*Vasquez*, 572 F.3d at 591.  Here, the ALJ found Plaintiff's statements not credible because they are inconsistent with his treatment history, the objective medical record, his activities of daily living, and his receipt of unemployment benefits.  (AR 34, 36.)  The Court takes each in turn and finds that there are several grounds on which the ALJ's credibility determination will be upheld.

<em>i.      Treatment History</em>

The ALJ first determined that Plaintiff "consistently failed to follow his prescribed treatments for recovery" following his left ankle surgery.  (AR 34.)  Consistent with this finding, the record demonstrates that although Plaintiff was directed by his surgeon Dr. Hento to "remain strictly nonweightbearing" and use a bone stimulator "daily," he repeatedly did not comply with these directives.  (*See* AR 308–09, 311, 313, 315, 316, 317, 318, 319, 320, 322, 323, 326.)

In evaluating a claimant's claimed symptoms, an ALJ may consider a claimant's failure to follow a prescribed course of treatment when weighing a claimant's credibility.  *See Tommasetti*, 533 F.3d at 1039–40; *Johnson v. Shalala*, 60 F.3d 1482, 1434 (9th Cir. 1995).  In so doing, however, an ALJ must consider a claimant's explanation for failing to undergo the recommended treatment.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  As the Ninth Circuit explained in *Fair v. Bowen*, it is the claimant's burden to adequately explain his or her failure to follow a prescribed course of treatment.  885 F.2d at 603 (claimant's failure to explain failure to seek treatment or follow a prescribed course of treatment can "cast doubt" on the sincerity of their testimony); *see also Smolen*, 80 F.3d at 1293.  An ALJ may discount a claimant's credibility due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  *Tommasetti*, 533 F.3d at 1039.

Here, Plaintiff does not explain his lack of compliance with treatment, instead asserting that the "record does not show significant non-compliance, as he reported missing only 3 days in a month for applying the bone stimulator."  (Doc. 17 at 15.)  But the record shows at least three more failures to use the bone stimulator as instructed (*see* AR 316, 320, 322) as well as several instances of Plaintiff applying weight to his left foot while ambulating after being directed to "remain strictly nonweightbearing" (*see* AR 313, 317, 318, 319, 320).  Plaintiff does not address this evidence in his briefing.

1    Because Plaintiff proffers no explanation for his failure to follow his prescribed course of

2    treatment, he has not met his burden of adequately explaining his failure to follow her treatment

3    regimen.  *See Fair*, 885 F.2d at 603.  Viewing the record as a whole, the Court finds that ALJ's

4    conclusion that Plaintiff was non-compliant with Dr. Hento's recommended course of treatment is

5    supported by substantial evidence.  The ALJ's determination that Plaintiff was non-compliant with

6    treatment is therefore a clear and convincing reason for discounting Plaintiff's subjective symptom

7    testimony.  *Tommasetti*, 533 F.3d at 1039.

8        In addition, the ALJ determined that, when Plaintiff did follow his recommended treatment

9    regimen of diet and exercise, his symptoms improved.  (AR 35.)  The record shows that following

10   Dr. Hwang's recommended treatment of weight management measures, exercise, leg elevation,

11   and compression stockings in March 2019 (AR 424, 428–29), Plaintiff reported to his primary care

12   physician that he had "no acute concerns," he was "working on diet and weight loss since last

13   encounter," and "improved in quality of food and portion control."  (AR 397.)

14       In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible

15   when their symptoms can be controlled by treatment.  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v),

16   416.929(c)(3)(iv)–(v);  *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006)

17   ("Impairments that can be controlled effectively with medication are not disabling for purposes of

18   determining eligibility for [disability] benefits.").  As there is substantial evidence of Plaintiff's

19   improvement with treatment, this is yet another clear and convincing reason for discounting his

20   subjective symptom testimony.  *See Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599

21   (9th Cir. 1999) (ALJ's adverse credibility determination properly accounted for physician's report

22   of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming

23   denial of benefits and noting that claimant's impairments were responsive to treatment).

24                    *ii.      Objective Medical Evidence*

25       The ALJ next found that Plaintiff's statements that he is unable to work due to pain in his

26   lower extremities are inconsistent with the overall record showing his "pain having been brought

27   under control."  (AR 35.)  Contradiction with evidence in the medical record is a "sufficient basis"

28

1 for rejecting a claimant's subjective symptom testimony.[10]  *Carmickle v. Comm'r, Soc. Sec.*

2 *Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see Morgan*, 169 F.3d at 600 (upholding "conflict

3 between [plaintiff's] testimony of subjective complaints and the objective medical evidence in the

4 record" as "specific and substantial" reason undermining credibility).

5          Plaintiff testified at the hearing that he can only walk for five minutes, stand for seven

6 minutes, and sit for ten minutes without experiencing pain in his legs.  (AR 58.)  Yet, as the ALJ

7 observed, the medical record shows that following his second surgery to remove the retracted

8 screw-type fixative in his left foot, Plaintiff reported to his surgeon Dr. Hento in February 2017

9 that his pain had been reduced to zero out of ten ("0/10"), where zero indicates no pain.  (AR 352.)

10 Plaintiff's reports to Dr. Hento about his pain control casts doubt on his allegations regarding his

11 condition.  *See Thomas*, 278 F.3d at 958–59 (inconsistencies in a claimant's testimony may be used

12 to discredit subjective complaints); *Light*, 119 F.3d at 792 (in weighing plaintiff's credibility, the

13 ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and

14 his conduct"); *see also Fair*, 885 F.2d at 604 n.5 (an ALJ can reject pain testimony based on

15 contradictions in plaintiff's testimony).  The Court finds no legal error in the ALJ's conclusion that

16 the objective record was inconsistent with Plaintiff's symptom testimony.

17                    *iii.*          *Activities of Daily Living*

18          It is also appropriate for an ALJ to consider a claimant's activities that undermine claims

19 of severe limitations in making the credibility determination, as was done here (*see* AR 35–36).

20 *See Fair*, 885 F.2d at 603; *Morgan*, 169 F.3d at 600; *Rollins*, 261 F.3d at 857*; see also Thomas*,

21 278 F.3d at 958–59 (an ALJ may support a determination that the claimant was not entirely credible

22 by identifying inconsistencies between the claimant's complaints and the claimant's activities.).  It

23 is well-established that a claimant need not "vegetate in a dark room" to be deemed eligible for

24 benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  If a claimant, however, can spend

25 a substantial part of their day engaged in pursuits involving the performance of physical functions

26

27 [10] Although a lack of medical evidence "cannot form the sole basis for discounting pain testimony, it is a factor that
the ALJ can consider in his credibility analysis."  *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th

28 Cir. 2001).  Not only did the ALJ properly consider the medical evidence, but it was not the sole basis for discrediting
Plaintiff's testimony.

1  that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit

2  an allegation of disability. *Fair*, 885 F.2d at 603. "Even where [Plaintiff's] activities suggest some

3  difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent

4  that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

5         As discussed above, Plaintiff alleges an inability to work due to his lower extremity pain.

6  (AR 58–59, 61.) Despite these alleged severe limitations, the hearing testimony shows, as detailed

7  by the ALJ (*see* AR 35–36), that Plaintiff can drive to pick his son up from school and to take him

8  home after visits, which totals about "four or five miles." (AR 52, 62.) According to Plaintiff, he

9  and his son watch television and play video and board games. (AR 57–58.) He also will

10 occasionally throw a ball with his son or play a round of "HORSE" basketball. (AR 62.) Plaintiff

11 testified can perform his personal hygiene such as brush his teeth and take a shower. (AR 55.) He

12 can occasionally shop for groceries and wash dishes. (AR 56–57, 63.) The Court finds that these

13 activities were reasonably considered by the ALJ to be inconsistent with Plaintiff's alleged inability

14 to work due to constant, severe, debilitating leg pain. (AR 36.) Accordingly, the inconsistency

15 between Plaintiff's activity level and his complaints is an additional clear and convincing reason

16 to find his statements and testimony not credible. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3);

17 *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).

18                    *iv.      Receipt of Unemployment Benefits*

19        Finally, the ALJ appropriately noted that Plaintiff received unemployment insurance

20 benefits for nine months following being laid-off from work and after his alleged onset date. (AR

21 36.) Though receipt of unemployment benefits is not dispositive of a person's capacity to perform

22 work, it does conflict with assertions of an inability to work because receipt of unemployment

23 insurance benefits was premised on an individual's attestation that he was ready, willing, and able

24 to work. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ validly discounted

25 claimant's credibility, in part, because he "received unemployment insurance benefits [after being

26 laid off] (apparently considering himself capable of work and holding himself out as available for

27 work)"). Plaintiff concedes he intended to return to work at the time he collected unemployment

28 benefits, which took place after his alleged onset date. (*See* Doc. 17 at 16 ("Plaintiff collected

unemployment benefits following his first surgery [and] he . . . intended to return to work.").)

In sum, because the ALJ gave numerous clear and convincing reasons for discounting Plaintiff's subjective pain testimony, there was no error.

### V.        CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   __**December 8, 2022**__                    _____/s/ _Sheila K. Oberto_____

UNITED STATES MAGISTRATE JUDGE